449 S.E.2d 64

**STATE of West Virginia ex rel. Fredrick I. YOUNG, Petitioner,**

v.

**James L. SIMS, Executive Director, Consolidated Public Retirement Board; Governor Gaston Caperton; Chuck Polan, Chairman; Glen B. Gainer III, Vice–Chairman, David A. Haney, Tony Lautar, Jr., Elizabeth Poundstone, S.S. Saterfield, Janet F. Wilson and David L. Wyant, Consolidated Public Retirement Board Members, in Their Official Capacities Only, Respondents.**

**Beulah KITTS, Petitioner Below, Appellant,**

v.

**The CONSOLIDATED PUBLIC RETIREMENT BOARD of the State of West Virginia, Respondent Below, Appellee.**

**Nos. 22009, 22010.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 1994.

Decided July 8, 1994.

Robert B. Wilson, Charleston, WV, for Fredrick I. Young.

Robert M. Nunley, Sr. Asst. Atty. Gen., Charleston, WV, for Consolidated Public Retirement Bd.

Paul A. Ryker, Huntington, WV, for Beulah Kitts.

WORKMAN, Justice:

This case involves two separate instances of benefit denials by the Consolidated Public Retirement Board ("Board"). These cases were consolidated for the purpose of clarifying the procedure for appeal in the event of a benefit denial by the Board. One of the actions was brought as an appeal from the circuit court and one as a mandamus proceeding. Given the varying factual and procedural backgrounds of the two actions, the cases will initially be discussed separately.

1. Mr. Young's medical leave of absence was non-renewable and his request for an unpaid personal leave was denied.

2. On the application, Mr. Young listed the following as the nature and cause of his disability: "Chronic Recurrent Mononucelosis, Chronic Depression, Alcohol Dependence,* Anxiety Disorder & Phobias *Possibly Chronic Alcohol Abuse[.]"

### I. Fredrick I. Young

Mr. Young was employed by the West Virginia Department of Health and Human Services ("DHHS") and worked as a substance abuse counselor at Huntington State Hospital until July 13, 1992. He was granted a medical leave of absence without pay effective July 5, 1992, through February 4, 1993, for chronic recurrent mononucleosis, persistent fatigue, recurrent pharyngitis, and low grade fever. Mr. Young was dismissed from his employment, effective March 9, 1993, based on his failure to return to work following the expiration of his approved medical leave.[1]

Mr. Young filed an application for disability retirement, dated January 14, 1993, which the Board received on January 19, 1993.[2] Mr. Young's treating physician, Dr. Robert Hess, certified in a report dated January 20, 1993, that Mr. Young was totally and permanently disabled. The Board's physician, Dr. William Short, examined Mr. Young on March 2, 1993, and in his report, dated May 13, 1993, confirmed Dr. Hess's report of Mr. Young's medical condition. Although Dr. Short identified additional physical and psychiatric problems undiagnosed by Dr. Hess, he expressed the opinion that Mr. Young retained the ability to perform light to moderate work.[3] By letter dated June 23, 1993, the Board denied Mr. Young's application for disability retirement.

The Board's denial letter reportedly states that there was insufficient medical evidence upon which to grant the application for benefits.[4] Mr. Young complains that the letter failed to provide explicit instructions regarding an appeal and that the only additional action indicated was the option of visiting a third physician, chosen by the Board, at his expense. The denial letter was accompanied by a one-page description of the process by

3. This opinion of Dr. Short's was conditioned on the need for a psychiatric evaluation and an evaluation of Mr. Young's heart condition.

4. The record, as submitted, does not contain a copy of the denial letter.

which the Board operates.[5] Mr. Young further complains that he was denied an opportunity to examine Dr. Short's report and findings and to present his case before the Board prior to its decision denying his application.

By letter dated July 16, 1993, Mr. Young requested a review of the Board's denial of benefits. The grounds upon which he requested such review was the agreement of both Drs. Hess and Short regarding Mr. Young's medical condition. The Board acknowledged its receipt of the July 16, 1993, letter through its letter dated July 30, 1993, wherein the Board reiterated that Mr. Young could be referred to another doctor of the Board's selection at his expense. Mr. Young claims that he did not seek a third examination because he could not afford the expense of an additional examination. This explanation was purportedly relayed to the Board through phone calls made on August 3 and 18, 1993.[6]

By letter dated August 18, 1993, the Board informed Mr. Young that he would have to be examined by another doctor before his claim could be reviewed. Mr. Young's counsel, by letter dated August 20, 1993, replied that a third examination was not consistent with the Board's procedures, as previously explained to him. During a meeting with Board member Mr. Sims and Mr. Crum which occurred in late August 1993, Mr. Crum advised Mr. Young's counsel that if Dr. Short concurred with Dr. Hess that Mr. Young was permanently and totally disabled, he would recommend Board approval of Mr. Young's application for benefits.

On September 24, 1993, the Board sent Mr. Young a copy of its new rules concerning benefit determination and appeal and inquired how he wished to proceed. By letter dated October 12, 1993, Mr. Young's counsel advised the Board that it now had in its possession two concurring reports from examining physicians finding Mr. Young permanently and totally disabled.[7] Based on these medical reports, Mr. Young's counsel moved that the Board grant Mr. Young a disability pension pursuant to their non-discretionary duty under West Virginia Code § 5–10–25 (1993). The Board did not respond to the October 12, 1993, letter and when Mr. Young's counsel inquired further, Mr. Crum told him that Mr. Young must now have a hearing before their new hearing examiner. According to Mr. Crum, this hearing was necessary based on the Board's conclusion that Dr. Short no longer qualified as their examining physician due to the cessation of his employment with the Marshall University School of Medicine.

Initially, the Board argues that the remedy of mandamus is improper because a writ of mandamus cannot properly issue absent: "(1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law." Syl. Pt. 3, in part, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981). The Board maintains that mandamus is improper in this case because that which Mr. Young seeks to have the Board do—award disability benefits—is discretionary under West Virginia Code § 5–10–25(a).

The procedure for applying for and obtaining a disability pension is set forth in West Virginia Code § 5–10–25(a):

Upon the application of a member or former member of the retirement system, or his present or past employing authority, any member or former member who (1) is or was in the employ of a participating public employer, (2) has ten or more years

---

**5.** Mr. Young states that the operational sheet failed to note which step in the process the denial letter constituted.

**6.** Mr. Young asserts that phone calls were made concerning the financial burden which would be imposed by the suggested third examination. He, or his counsel, claims to have spoken with Doris Lykens on August 3, 1993, and with Doris

Lykens, James L. Sims, and George V. Crum on August 18, 1993, concerning this issue.

**7.** Dr. Short submitted a form "Consolidated Public Retirement Board Physician's Report," dated September 30, 1993, which noted that Mr. Young had chronic fatigue syndrome and substance abuse, and further indicated that he was totally and permanently disabled.

of credited service of which three years is contributing service, and (3) becomes totally and permanently incapacitated for employment, by reason of a personal injury or disease, *may be retired* by the board of trustees if after a medical examination of the said member or former member, made by or under the direction of a medical committee consisting of two physicians, one of whom shall be named by the board, and one by the said member or former member, the said medical committee reports, in writing, to the board that (1) the said member or former member is physically or mentally totally incapacitated for employment, (2) that such incapacity will probably be permanent, and (3) that the said member or former member should be retired. In the event the two above-mentioned physicians do not agree in their findings, then the board of trustees *may,* at its discretion, appoint a third physician to examine said member or former member and, based upon the third physician's report in writing, the board *may retire* said member or former member.

*Id.* (emphasis supplied).

The Board contends that the award of a disability pension is clearly discretionary under the statute and that in denying benefits to Mr. Young, it acted properly within its discretion. According to the Board, the various medical reports furnished in support of Mr. Young's claim present inconsistencies as well as the more serious issue of whether he is entitled to the requested pension on disability grounds. These inconsistencies include the fact that on November 24, 1992, Mr. Young's treating physician prepared a "To Whom It May Concern" letter which stated that, "At this time, the patient remains symptomatic in regards to his fatigue, and is unable to return to work at this time. I forsee this for at least the next six months." Then, less than two months later, Dr. Hess submitted a physician's report form to the Board on behalf of Mr. Young which indicates that he will never be able to be gainfully employed in any capacity, and is totally and permanently disabled. The findings were made by checking appropriate boxes on the form and no amplifying information was provided as to the basis for his conclusion. Dr. Hess's form did not make any reference to any substance abuse or psychiatric problems, which Mr. Young himself had included as grounds for applying for the disability pension.[8]

The Board was also troubled by the fact that its examining doctor, Dr. Short,[9] originally concluded that Mr. Young was not totally and permanently disabled and then, without any request from the Board regarding the rendering of an additional opinion, a second report was submitted by Dr. Short on September 20, 1993, which stated that Mr. Young was totally and permanently disabled. While the first report of Dr. Short was comprised of both the physician's report form and a two-page detailed evaluation of his examination and findings, the second report consisted solely of the physician's report form. The Board believed that, without any further examination of Mr. Young, Dr. Short completely reversed his position. The Board states that despite its efforts to contact Dr. Short regarding his change of opinion, it has been unsuccessful in obtaining any additional information regarding this matter from Dr. Short.

The Board submits further that it is charged with acting in a fiduciary capacity in administering the funds entrusted to it. Given what the Board describes as inconsistencies in Dr. Hess's reports and Dr. Short's reversal of opinion as well as Mr. Young's refusal to see a third physician, the Board felt compelled to require that Mr. Young's claim be submitted to an impartial hearing examiner. While the Board states that Mr. Young was offered, through counsel, the opportunity for an administrative hearing, Mr. Young disputes this claim.

---

8. Mr. Young listed alcohol dependence, as well as anxiety disorder and phobias, as the nature and cause of his alleged disability on his application.

9. Although Dr. Short was ultimately declared not to qualify as the Board's examining physician due to the end of his employment by the state, he was their examining doctor at the time of his initial examination of Mr. Young.

Mr. Young filed a petition with this Court on November 5, 1993, seeking a writ of mandamus to direct the Board to grant him a disability retirement pension.

## II.   Beulah Kitts

Ms. Kitts, who is fifty-three years old, last worked as a dispatcher with the Wayne County Sheriff's Department on April 5, 1990.   She applied for disability retirement benefits with the Board on or about May 29, 1992.   As grounds for the disability, Ms. Kitts alleged hypertension, coronary artery disease, arthritis, emphysema, collapsed vertebra in upper back, swelling of feet and legs, and poor circulation in her feet and legs.

In support of her application, she submitted evidence to the Board that she had obtained disability insurance benefits from the federal Social Security Administration.   Dr. Iesar Pena submitted a written evaluation on May 29, 1992, which stated that Ms. Kitts was totally and permanently disabled, that she would never be able to be gainfully employed, and that she would never be able to return to the sheriff's department.   Following the receipt of Dr. Pena's report, the Board referred Ms. Kitts to Dr. Nilima Bhirud for an evaluation.   In a report dated June 16, 1992, Dr. Bhirud noted that a stress test administered to Ms. Kitts following her angioplasty and heart attack in 1990 "turned out to be okay.... Based on today's examination I do not see any reason why she couldn't do her previous job."

After two reviews, the Board rejected the application of Ms. Kitts on February 2, 1993, and advised her of her right to appeal to the Circuit Court of Kanawha County.   She opted, however, to exercise her statutory right to seek review of the Board's decision before the Circuit Court of Wayne County pursuant to the West Virginia Administrative Procedures Act ("APA").   W.Va.Code §§ 29A–1–1

to –7–4 (1993);   see W.Va.Code § 29A–5–4(b). By its order dated June 22, 1993, the Wayne County Circuit Court affirmed the Board's decision.   The circuit court's ruling forms the basis of Ms. Kitts' appeal.

As grounds for her appeal, Ms. Kitts argues that the object of the West Virginia Public Employees Retirement Act (the "Act")[10] is to supplement benefits awarded under the federal Social Security Act.   Because she was awarded federal disability benefits, she contends that she is automatically entitled to an award of disability under the Act.   In furtherance of her position, she claims that the Legislature codified a rule of liberality in awarding disability benefits which specifically states that the Act was intended to supplement benefits awarded pursuant to the federal Social Security Act. See W.Va.Code § 5–10–3a.[11]

In contrast, the Board maintains that Ms. Kitts was properly denied disability retirement benefits because the medical evidence did not support her claim of total and permanent incapacity for employment.   Specifically, the Board refers to the report of its doctor, Dr. Bhirud, which contained over two pages of findings, including the conclusion that she had shown significant improvement since her angioplasty procedure in 1991 and should be able to continue her job as a dispatcher.   Furthermore, the Board notes that although it informed Ms. Kitts throughout the process that she was free to submit any additional information in support of her application, she declined to do so.   Finally, the Board maintains that it has fully and completely complied with statutory requirements for considering applications for retirement benefits under the Act.

The Circuit Court of Wayne County upheld the Board's denial of benefits to Ms. Kitts and she appeals that decision pursuant

10.   See West Virginia Code §§ 5–10–1 to –54 (1994).

11.   West Virginia Code § 5–10–3a states:
   The provisions of this article shall be liberally construed so as to provide a general retirement system for the employees of the state herein made eligible for such retirement: Provided, however, That nothing in this article shall be construed as permitting any govern-

mental unit, its officers or employees, to substitute the retirement plan herein authorized for federal social security, now in force in West Virginia.
   The purpose of this article is to provide a state pension plan which supplements the federal social security pension plan now in force and heretofore authorized by law for all officers and employees of the state.

to the provisions of the APA. *See* W.Va. Code § 29A–6–1.

### III.

As an initial matter, we state that the the Board is subject to and governed by the APA. *See* W.Va.Code §§ 29A–1–1, –2(a). This finding requires that any applicant for retirement benefits under the Act who wishes to appeal the Board's denial of benefits must follow the procedures of the APA. Accordingly, as set forth in West Virginia Code § 29A–5–4, both of the parties hereto were required to file an appeal of the Board's denial of benefits to a circuit court. Of the two, only Ms. Kitts followed the proper procedure.

Mr. Young claims that the reason he did not appeal directly to the circuit court was because he did not have a decision from the Board stating the basis for its denial of benefits. While he was statutorily required to institute an appeal in circuit court upon receipt of a "final order or decision," it is somewhat unclear as to whether his case had reached the necessary level of finality from which an appeal could be taken. W.Va.Code § 29A–5–4. During oral argument and subsequent thereto, through correspondence submitted to the Court, the Board and Mr. Young have evidenced that they are in dispute with regard to whether an administrative hearing was offered to Mr. Young. The Board claims that they did in fact offer to schedule an administrative hearing to resolve Mr. Young's claim, whereas Mr. Young contends that this offer of an administrative hearing "is patently false." [12] While we are not in a position to rule on whether or not Mr. Young was offered an administrative hearing, the dispute surrounding the offering of such a hearing certainly suggests to this Court that his proceeding had not reached the level of finality from which an appeal to the circuit court was appropriate. Accord-

ingly, we grant the requested writ of mandamus solely for the purpose of permitting an administrative hearing to be held on the issue of Mr. Young's disability.

We are unpersuaded by Ms. Kitts' argument that the Board is mandated to award disability benefits upon submission of evidence documenting an award of benefits under the federal Social Security Act. Although the Act does state, as Ms. Kitts claims, that it is intended to "supplement" awards made under the federal Social Security Act, there is nothing in the Act which mandates that the Board award benefits based solely on the existence of an award of benefits pursuant to the federal social security program. The Board retains the discretion, as evidenced by the language of West Virginia Code § 5–10–25(a), to award benefits in all cases, including those in which the submitted evidence includes a finding of disability under the federal Social Security Act.

We have not been presented with any grounds which would permit us to reverse the conclusion of the circuit court's ruling upholding the Board's denial of benefits. However, because there seems to have been some confusion regarding the implementation of new rules and regulations by the Board, we are remanding Ms. Kitts' case to the Board to permit the opportunity for a hearing before an administrative law judge to resolve the issue of Ms. Kitts' entitlement to disability benefits. [13]

Based on the foregoing, the writ of mandamus requested by Mr. Young is granted only for the purpose of permitting an administrative hearing to be held on the issue of his entitlement to disability benefits and in the case of Ms. Kitts, we reverse and remand the decision of the Circuit Court of Wayne County to similarly permit an administrative hearing to determine whether Ms. Kitts is entitled to disability benefits.

---

12. Through correspondence submitted to this Court subsequent to oral argument, Mr. Young submits that he has been requesting an administrative hearing since July of 1993.

13. Ms. Kitts' counsel raised the issue post-oral argument concerning the fact that these regulations are merely proposed as opposed to ap-

proved rules. Notwithstanding this fact, if the Board is in fact currently scheduling and holding hearings before administrative law judges, as represented during oral argument, then Ms. Kitts should likewise be entitled to such a procedural forum for resolving the issue of her entitlement to disability benefits.